UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA M.,

                  Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00090 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Melissa M. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 7) is denied.

**BACKGROUND**

Plaintiff protectively filed her application for DIB on October 24, 2014.  (Dkt. 5 at

28, 580).[1]  In her application, Plaintiff alleged disability beginning December 1, 2013, due

to anxiety, alcohol dependence, and acid reflux due to anxiety.  (*Id.* at 28, 581).  Plaintiff's

applications were initially denied on January 28, 2015.  (*Id.* at 28, 645-47).  At Plaintiff's

request, a hearing was held before administrative law judge ("ALJ") Charlie Johnson in

Buffalo, New York, on March 21, 2017.  (*Id.* at 28, 147-91).  On July 3, 2017, the ALJ

issued an unfavorable decision.  (*Id.* at 28, 592-603).  The decision was remanded by the

Appeals Council on August 9, 2018 (*id.* at 28, 608-13), and a second hearing was held by

ALJ Melissa Jones on August 6, 2019, in Buffalo, New York (*id.* at 28, 108-46).  An

unfavorable decision was issued on August 27, 2019 (*id.* at 28, 614-32) and, on September

1, 2020, the decision was again remanded by the Appeals Council (*id.* at 28, 639-44).

Thereafter, on June 7, 2021, ALJ Mary Lattimore held a telephone hearing.  The

ALJ issued an unfavorable decision on July 22, 2021.  (*Id.* at 25-42).  Plaintiff requested

Appeals Council review; her request was denied on December 12, 2022, making the ALJ's

determination the Commissioner's final decision.  (*Id.* at 8-11).  This action followed.

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).   The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.   42 U.S.C. § 405(g).   "Substantial evidence means more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).   It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."   *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).   However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."   *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.      Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.   *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).   At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not

disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an

impairment, or combination of impairments, that is "severe" within the meaning of the Act,

in that it imposes significant restrictions on the claimant's ability to perform basic work

activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If

the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or

medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the

claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained

basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC

permits the claimant to perform the requirements of his or her past relevant work. *Id*.

§ 404.1520(f). If the claimant can perform such requirements, then he or she is not

disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the

burden shifts to the Commissioner to show that the claimant is not disabled. *Id*.

§ 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the

claimant "retains a residual functional capacity to perform alternative substantial gainful

work which exists in the national economy" in light of the claimant's age, education, and

work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted);

*see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.      The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step

sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that

Plaintiff met the insured status requirements of the Act through December 31, 2025.  (Dkt.

5 at 30).  At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful work activity since June 1, 2016, the amended alleged onset date.[2]  (*Id*. at 31).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of:

"status post cervical discectomy and fusion, asthma, irritable bowel syndrome in the

context of status post colonic resection, hyponatremia, bipolar disorder, generalized

anxiety disorder, and insomnia."  (*Id.*).  The ALJ further found that Plaintiff's medically

determinable impairments of hypertension, hypothyroidism, pancreatic cyst, cecal

volvulus, thrombocytosis, anemia, gastroesophageal reflux disease (GERD), left ankle/foot

osteoarthritis status post fracture, and alcohol use disorder were non-severe.  (*Id*. at 31-32).

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of any Listing.  (*Id*.

at 33).  The ALJ particularly considered the criteria of Listings 1.15, 3.03, 5.06, 12.04, and

12.06 in reaching her conclusion.  (*Id.* at 33-34).

---

[2]      At the first hearing on March 21, 2017, Plaintiff amended her alleged onset date to
June 1, 2016.

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC

to perform light work as defined in 20 C.F.R. § 404.1567(b), except as limited by the

following:

> [Plaintiff] cannot be exposed to unprotected heights, moving mechanical parts, hazardous machinery, or concentrated amounts of fumes, odors, dust, gases, or other pulmonary irritants.  [Plaintiff] can perform a low stress job, which is defined as one that involves only simple, routine work, and she can make simple workplace decisions not at a production race pace (assembly line pace).  She can tolerate minimal changes in workplace processes and settings.  The claimant may require two unscheduled five-minute bathroom breaks per day.

(*Id.* at 34-35).  At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work.  (*Id.* at 40).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to

conclude that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of marker, router, and assembler.  (*Id.* at

41-42).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.

(*Id.* at 42).

## II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1)

remand is warranted because the ALJ crafted a highly specific RFC which assessed

bathroom restrictions based on her own surmise, and (2) remand is warranted because the

ALJ failed to apply the treating physician rule or give good reasons for rejecting the opinion

of Plaintiff's psychiatrist, Lauren Derhodge, D.O.  (Dkt. 7-1 at 1, 17-28).  The Court has

considered each of these arguments and, for the reasons discussed below, finds them without merit.

## A.    The RFC Determination

Plaintiff's first argument is that the ALJ erred by crafting a "highly specific" RFC with a bathroom limitation.  (Dkt. 7-1 at 17-22).  In response, the Commissioner contends that it was the ALJ's duty to resolve conflicts in the record and to formulate an RFC, and that the RFC is not required to match any particular medical opinion.  (*See* Dkt. 8-1 at 12-16).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in h[er] decision," *id.*, an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).  At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement

or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

Here, the ALJ assessed Plaintiff with having the serious impairment of irritable bowel syndrome in the context of status post colonic resection.  The assessed RFC permits Plaintiff to take two unscheduled five-minute bathroom breaks per day.

Plaintiff takes issue with the fact that the RFC adopted a specific limitation for bathroom breaks that was not supported by medical opinion evidence in the record.  (*See* Dkt. 7-1 at 17-22; *id*. at 19 ("NP Kreppel's opinion was not the same as the RFC.")). Contrary to what Plaintiff's argument suggests, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at \*4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)). Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff two unscheduled five-minute bathroom breaks per day in the absence of a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions.  *See, e.g., Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1467-DB, 2022 WL 3346930, at \*10 (W.D.N.Y. Aug. 12, 2022) ("just because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error"); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at \*4 (W.D.N.Y. July 13, 2022) ("an RFC determination, even

one containing highly specific limitations, is not fatally flawed merely because it was

formulated absent a medical opinion").

Plaintiff's reliance on *Cosnyka v. Colvin*, 576 F. App'x 43 (2d Cir. 2014) and other

related cases is misplaced.[3]  In *Cosnyka*, the ALJ assessed a ten percent off-task limitation,

which was based on the opinion of an orthopedic examiner who reported that the plaintiff

would require "regular comfort breaks."  *Id*. at 46.  The Second Circuit remanded the case

because there was "no evidence in the record," and "evidence in the record to the contrary"

supporting any such limitation.  *Id*.  In this case, and as further explained below, there is

evidence in the record from which the ALJ could assess a limitation for bathroom breaks,

and therefore the limitation included in the RFC was not formulated out of whole cloth.  In

other words, this is not a case where the ALJ lacked any opinion or medical evidence

informing the RFC.

For example, the ALJ discussed Plaintiff's medical records addressing the

management of her IBS, which revealed that Plaintiff had been following up with a

gastroenterologist.  (Dkt. 5 at 36).  After undergoing an emergent ileocolonic resection she

experienced diarrhea, but following a medication adjustment in April 2019, Plaintiff

reported improved symptoms, with only occasional diarrhea due to dietary indiscretions.

---

[3]     Plaintiff cites the case of *Cherise J. v. Comm'r of Soc. Sec.*, No. 20-CV-1924MWP, 2023 WL 2472476 (W.D.N.Y. Mar. 13, 2023), which she states is a decision authored by the undersigned.  (*See* Dkt. 7-1 at 22).  However, that opinion was issued by the Hon. Marian W. Payson, United States Magistrate Judge, and not the undersigned.  Further, in *Cherise J.*, Judge Payson noted that there were <u>no</u> medical opinions in the record assessing that the plaintiff would need additional bathroom breaks, and the ALJ did not identify or explain how she concluded that the plaintiff's impairment would be accommodated by two unscheduled breaks.  2023 WL 2472476, at *4.

(*Id.*).  Plaintiff did not return to her gastroenterologist until November 2020, over a year

after her prior appointment, and despite reporting multiple watery stools daily, her weight

had increased by five pounds.  (*Id.*).

In addition, the ALJ discussed at length an opinion offered by Susan Kreppel, ANP,

from Gastroenterology Associates, who provided gastroenterology care for Plaintiff.  (*Id.*

at 40; *see also* Dkt. 6 at 583-86).  Ms. Kreppel opined that Plaintiff's prognosis was

"stable/good," and noted that she had some abdominal pain and cramping.  (Dkt. 6 at 583).

Her medications may cause fecal urgency and diarrhea.  (*Id.* at 584).  Plaintiff's symptoms

would "occasionally" interfere with the attention and concentration needed to perform

simple work tasks, and she could handle moderate stress.  (*Id.*).  In terms of bathroom

breaks, Ms. Kreppel opined that Plaintiff would need unscheduled bathroom breaks for 15

minutes on average, but how often she would be in need of these breaks was "unknown."

(*Id.* at 585).

The ALJ discussed Ms. Kreppel's opinion and explained that she gave this opinion

"significant weight":

> although the opinion [is] vague regarding the frequency of restroom breaks
> required, it is from a treating specialist, and associated treatment notes
> indicate that the claimant's gastrointestinal symptoms are stable barring
> dietary indiscretions.  Regarding the frequency of bathroom breaks, the
> undersigned finds that two unscheduled breaks are sufficient to
> accommodate the claimant's work-related limitations in this area in light of
> treatment notes that note occasional diarrhea associated with dietary
> indiscretions.

(Dkt. 5 at 40 (citations omitted); *see also* Dkt. 6 at 369 (August 22, 2019 treatment note

from Gastroenterology Associates, LLP, noting that Plaintiff has "occasional diarrhea but

this is related to dietary indiscretions," and that Plaintiff "is doing much better" and "is doing fairly well from a GI standpoint")).

Accordingly, contrary to Plaintiff's argument, the ALJ did not formulate the bathroom break limitation based on her own lay opinion, but rather considered the limitations assessed by Ms. Kreppel in conjunction with other evidence in the record, which demonstrated that Plaintiff's IBS symptoms occurred only occasionally and were generally well-controlled.  Given this, the RFC—which permits Plaintiff to take two unscheduled breaks in addition to her regularly scheduled breaks—is supported by substantial evidence. *See also* Dkt. 5 at 40 ("Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by unremarkable baseline physical examinations as well as the claimant's ability to work as a caretaker and train for marathons.  Although she may require periodic bathroom breaks, this is accommodated by the above limitation in addition to normal breaks; as noted above, treatment notes indicate that the claimant is doing fairly well from a gastrointestinal standpoint with only occasional diarrhea associated with dietary indiscretions.")).  In other words, it is clear to the Court how the ALJ arrived at this limitation, and remand is not required on this basis.

## B.     Assessment of Treating Physician Opinion

Plaintiff's second argument is that the ALJ erred when assessing the opinion offered by Dr. Derhodge.  (Dkt. 7-1 at 22-28).  In response, the Commissioner contends that

substantial evidence supported the RFC finding, and the ALJ's consideration of Dr. Derhodge's opinion was proper.  (Dkt. 8-1 at 16-25).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).  These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*.

Whatever weight the ALJ assigns to the treating physician's opinion, she must "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by

the evidence in the case record, and must be sufficiently specific . . . ."  *Harris*, 149 F.

Supp. 3d at 441 (internal quotation marks omitted).  The Second Circuit "[does] not hesitate

to remand when the Commissioner's decision has not provided 'good reasons' for the

weight given to a [treating physician's] opinion and [it] will continue remanding when [it]

encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the

weight assigned to a treating physician's opinion."  *Halloran*, 362 F.3d at 33.

Here, Plaintiff argues that the ALJ did not properly weigh an August 2019 opinion

offered by Dr. Derhodge.  (Dkt. 7-1 at 22, 24).  Specifically, Plaintiff contends that the ALJ

failed to evaluate the required treating physician factors and failed to credit the opinion,

even though it is supported by other evidence in the record.  (*Id*. at 22-28).

Dr. Derhodge completed a mental impairment questionnaire on August 15, 2019.

(Dkt. 6 at 269-74).  The questionnaire noted that Dr. Derhodge had been seeing Plaintiff

since October 2016, every four to six weeks.  (*Id*. at 269).  During periods of exacerbation,

Plaintiff experienced depressed mood or expansive euphoric mood, anxiety, restlessness,

disorganized thinking, poor concentration, and rapid speech.  (*Id*.).  Plaintiff had an

"unlimited or very good" ability to perform the following activities of mental functioning:

understand and remember very short and simple instructions; carry out very short and

simple instructions; maintain regular attendance and be punctual within customary, usually

strict tolerances; sustain an ordinary routine without special supervision; make simple

work-related decisions; accept instructions and respond appropriately to criticism from

supervisors; get along with co-workers or peers without unduly distracting them or

exhibiting behavioral extremes; respond appropriately to changes in a routine work setting;

be aware of normal hazards and take appropriate precautions; set realistic goals or make plans independently of others; interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in an unfamiliar place; and use public transportation. (*Id*. at 271-72). Plaintiff had a "limited but satisfactory," ability to do the following activities: remember work-like procedures; work in coordination or proximity to others without being unduly distracted; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; and deal with the stress of semiskilled and skilled work. (*Id*.). Plaintiff was "seriously limited" meaning the "ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting" in only a few categories of mental functioning, including maintain attention for a two-hour segment; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id*.). Plaintiff had "moderate" restrictions for activities of daily living, "none/mild" difficulties in maintaining social functioning, "marked" difficulties in maintaining concentration, persistence, or pace, and she would be absent from work about two days per month. (*Id*. at 273-74).

The ALJ discussed this opinion and concluded that it was entitled to "partial" weight:

> Although Dr. Derhodge has a treatment relationship with the claimant, this opinion is dated just six months after the above [Department of Social Services] opinion, and there is no explanation provided for the increased limitation from moderate to marked in the area of maintaining concentration, persistence, or pace. A marked limitation is also inconsistent with treatment

notes from this period, which consistently record findings including an organized and goal-directed thought process and intact cognition.

(Dkt. 5 at 39 (citation omitted)).

The Court concludes that the ALJ's discussion and assessment of this opinion is proper. Plaintiff contends that the ALJ did not adequately consider that Dr. Derhodge began treating Plaintiff in September 2016, and therefore there was an "extensive relationship." (Dkt. 7-1 at 25). Plaintiff is incorrect. The ALJ plainly considered the nature and extent of the treatment relationship, specifically noting on multiple occasions that Dr. Derhodge was Plaintiff's treating psychiatrist (*see* Dkt. 5 at 38 ("Lauren Derhodge, DO, the claimant's psychiatrist . . ."); *id*. at 39 ("Dr. Derhodge has a treatment relationship with the claimant . . .")). Further, contrary to Plaintiff's assertion, the ALJ also noted the length of the treating relationship, including that Dr. Derhodge had been treating Plaintiff since 2016. (*See id*. at 38 ("The claimant began treatment with Dr. Derhodge in September 2016, after being admitted for inpatient treatment . . ."))[4] Accordingly, the Court is satisfied that the ALJ considered both the nature and extent of the treating relationship as well as Dr. Derhodge's specialty in psychology.

The ALJ also considered the consistency of Dr. Derhodge's opinion in relation to other evidence in the record. "Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the

---

[4]    The ALJ specifically noted the length of the treatment relationship when assessing an earlier opinion offered by Dr. Derhodge in November 2017, but the Court is nevertheless satisfied that the record is clear that the ALJ considered the length of the treating relationship when assessing all of the opinions offered by Dr. Derhodge, including the August 2019 opinion challenged by Plaintiff.

treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record. . . ." *Halloran*, 362 F.3d at 32 (citation omitted).  Here, the ALJ explained that Dr. Derhodge's August 2019 opinion was inconsistent with the February 2019 Department of Social Services opinion she offered six months prior, and there was no explanation for the increased limitation from moderate to marked in the area of maintaining concentration, persistence, or pace.  (Dkt. 5 at 39; *see also* Dkt. 6 at 661-62 (Erie County Department of Social Services Medical Examination form, completed by Dr. Derhodge and dated February 2019, noting that Plaintiff was only moderately limited in her ability to maintain attention and concentration)).

In addition, the ALJ noted that a marked limitation was inconsistent with treatment notes from this period, which consistently revealed findings such as organized and goal-directed thought processes, and intact cognition.  (Dkt. 5 at 39; *see also id*. at 37 (discussing examination by consultative examiner in February 2021, who found that Plaintiff had moderate limitations for maintaining attention and concentration); Dkt. 6 at 129-30 (April 1, 2019 psychiatry progress note from Dr. Derhodge, noting that Plaintiff had organized thought processes, intact cognition, and good insight and judgment); *id*. at 728-29 (June 27, 2019 psychiatry progress note from Dr. Derhodge, revealing normal mental status examination); *id*. at 734-35 (August 15, 2019 psychiatry progress note, with normal mental

status findings)).  Accordingly, the ALJ plainly considered the treating physician rule and offered good reasons for rejecting certain aspects of Dr. Derhodge's August 2019 opinion.

Plaintiff contends that, to the extent the February 2019 and August 2019 opinions with respect to maintaining concentration, persistence, or pace were inconsistent, the ALJ should have recontacted Dr. Derhodge for clarification.  (Dkt. 7-1 at 27).  However, the ALJ is not required to re-contact a doctor, or to further develop the record, where the record before the ALJ is adequate to determine whether the plaintiff is disabled.  *See, e.g., Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012); *see also Calderon v. Colvin*, No. 5:15-CV-1021 (GTS), 2016 WL 7156555, at *7 (N.D.N.Y. Dec. 7, 2016) ("Because the record evidence was adequate to permit the ALJ to make a disability determination, the ALJ was not required to recontact Dr. Razzaq.").  Here, the record—which is over 2,200 pages in length—contains opinion evidence from four different providers assessing Plaintiff's mental functional limitations, including three separate opinions offered by Dr. Derhodge.  Accordingly, the record before the ALJ was sufficient to make a determination on Plaintiff's case, and the ALJ was not required to re-contact Dr. Derhodge to make any further inquiry.

Finally, the Court notes that the mental RFC—which requires that Plaintiff perform simple, unskilled work—is entirely supported by substantial evidence in the record.  For example, Christine Ransom, Ph.D., the consultative examiner, found that Plaintiff had at most moderate limitations.  (*See* Dkt. 6 at 276-79).  This opinion is consistent with an RFC requiring unskilled work.  *See, e.g., Cory W. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1424-DB, 2021 WL 5109663, at *5 (W.D.N.Y. Nov. 3, 2021) ("Moderate mental limitations do

not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work." (collecting cases)); *see also Morales v. Berryhill*, 484 F. Supp. 3d 130, 150 (S.D.N.Y. 2020) ("a moderate limitation in [the area of concentration, persistence, or pace] is not inconsistent with an RFC to perform simple work"). Further, the majority of the limitations assessed by Dr. Derhodge are consistent with a finding that Plaintiff is capable of performing unskilled work.

In sum, the Court finds that the ALJ properly evaluated Dr. Derhodge's August 2019 opinion pursuant to the treating physician rule, and her reasons for not adopting the entirety of Dr. Derhodge's opinion is supported by substantial evidence in the record, as is the assessed mental RFC. For those reasons, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 19, 2024
          Rochester, New York